IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SHARON VIRGINIA LENORE NORDIN, § § | |
| Plaintiff, § § § | CIVIL ACTION NO. 4:16-CV-00830-CAN |
| v. § § | |
| COMMISSIONER, SSA, § § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g), denying her claim for disability insurance benefits and supplemental security income. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be **REMANDED.**

BACKGROUND

On March 28, 2014, Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), under Titles II and XVI of the Social Security Act ("Act"), alleging an onset of disability date of September 30, 2009 [TR 251-58]. Plaintiff claimed disability because of degenerative disc disease of the lumbar spine, status post fusion surgery, spondyoarthritis, Ehlers Danlos Syndome, dengerative disc disease of the cervical and thoracic spine, depression, and anxiety [TR 12-13]. Plaintiff was born on November 12, 1977 and was thirty-one (31) years of age at the alleged onset of her disability. She was thirty-eight (38) years old on the date of the ALJ's decision (June 20, 2016) [TR 23, 251, 253]. Plaintiff was, at all times relevant to this case, a "younger individual age 18-49." *See* 20 C.F.R. § 416.963(d). Plaintiff

has a high school education [TR 46] and past relevant work as a waitress, a greenhouse worker, a sales representative, a bartender, and an insurance clerk [TR 22, 298, 316-21, 373, 376, 379].

Plaintiff's claims were initially denied [TR 151-57] and upon reconsideration [TR 160-65]. Plaintiff requested an administrative hearing [TR 166-69], which was held before an Administrative Law Judge ("ALJ") on May 12, 2016 [TR 40-82]. At hearing, the ALJ heard testimony from Plaintiff and a vocational expert. Plaintiff was represented by counsel at the hearing.

On June 20, 2016, the ALJ issued an unfavorable decision, denying Plaintiff benefits [TR 7-31]. Applying the sequential, five-step analysis, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since September 30, 2009, the alleged disability onset date [TR 12]. At step two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, status post fusion surgery; spondyoarthritis, Ehlers Danlos Syndrome; degenerative disc disease of the cervical and thoracic spine; depression; and anxiety [TR 12-13]. At step three, the ALJ found that these impairments, singly or in combination, did not satisfy the requirements for a presumptive finding of disability under the Act [TR 13-14]. At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform "less than the full range of light work" [TR 14-22]. Specifically, the ALJ found Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, stand or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday [TR 14]. The ALJ further found that Plaintiff could never climb ladders, ropes, or scaffolds; limited to occasional balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; could not be exposed to work hazards such as unprotected heights or dangerous moving machinery; limited to understanding, remembering and carrying out short, simple instructions; and interact appropriately with co-workers and the general public on an

occasional basis [TR 14-15]. Continuing the step four analysis, the ALJ then determined that Plaintiff was unable to perform any of her past relevant work [TR 22]. At step-five, based on Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ found there were jobs existing in significant numbers in the national economy that Plaintiff could perform [TR 22-23]. Thus, the ALJ concluded Plaintiff was not disabled from September 30, 2009 until the date of the ALJ's decision [TR 23].

Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 5-7]. The Appeals Council denied the request for review on August 30, 2016, making the ALJ's decision the Commissioner's final administrative decision [TR 1-4].[1]

On October 31, 2016, Plaintiff filed her Complaint under 42 U.S.C. § 405(g), appealing the final decision [Dkt. 1]. On February 10, 2017, the Administrative Record was received from the Social Security Administration [Dkt. 10]. Plaintiff filed her Brief on April 4, 2017 [Dkt. 19], and the Commissioner filed her Brief in Support of the Commissioner's Decision on June 5, 2017 [Dkt. 24]. Plaintiff filed her reply brief on June 15, 2017 [Dkt. 25].

**LEGAL STANDARDS**

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" is determined by a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

---

[1] Plaintiff is insured for Title II purposes through December 31, 2016 [TR 12, 265, 272, 292, 333-43]. The Court's review, however, is confined to the Commissioner's final decision, which is the ALJ's decision dated June 20, 2016 [TR 23]. *See* 42 U.S.C. § 405(g). The adjudicated period for Plaintiff's Title II claim is thus from September 30, 2009 (Plaintiff's alleged disability onset date), through June 20, 2016 (date of ALJ's decision) [TR 23, 251]. The adjudicated period for Plaintiff's Title XVI claim is from March 28, 2014 (Plaintiff's protective application date), through June 20, 2016 (date of ALJ's decision) [TR 23, 253]. *See* 20 C.F.R. §416.202 (g) (claimant must file an application to be eligible for SSI benefits); *see also* 20 C.F.R. § 416.203 (claimant eligible for SSI benefits for a given month only if she meets the requirements of 20 C.F.R. § 416.202 in that month).

*Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

*Substantial Evidence*

In an appeal under § 405(g), judicial review of the Commissioner's decision to deny benefits is limited to determining whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

## ANALYSIS

This appeal raises three issues: (1) whether the ALJ properly considered the medical opinions of Plaintiff's treating rheumatologist and/or nurse practitioner when determining Plaintiff's RFC, (2) whether the ALJ properly evaluated Plaintiff's credibility, and (3) whether the ALJ relied on flawed testimony from the vocational expert.

### *Dr. Vasey, Plaintiff's Treating Rheumatologist*

Plaintiff contends that, when determining her RFC, the ALJ failed to properly weigh the opinions of her treating rheumatologist, Dr. Frank Vasey. Specifically, Plaintiff argues that Dr. Vasey's opinions are not contradicted by other first-hand medical evidence and should have been accorded controlling weight; alternatively or in addition, Plaintiff argues that the ALJ improperly failed to conduct the detailed six factor analysis required.

### *Requirements for Giving Weight to Treating Physician*

The treating physician rule provides that the opinion of a claimant's treating physician is entitled to great weight. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995). Indeed, a treating physician's opinion regarding the severity and nature of a plaintiff's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

with. . .other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).[2] But the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" so long as good cause is shown. *Newton*, 209 F.3d at 456. As stated clearly in *Newton*:

> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

*Id.* at 455-56 (internal citations and quotation marks omitted); *see, e.g., Greenspan*, 38 F.3d at 237.

***Factors to be Considered Before Declining to Give Treating Physician's Opinion Controlling Weight***

SSA regulations provide that the ALJ "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *See* 20 C.F.R. § 404.1527(c)(2) (effective August 24, 2012 to March 26, 2017); *accord* 20 C.F.R. § 416.927(c)(2) (mental impairments). The regulations require the ALJ to consider six specific factors to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." *Id.* Specifically, the ALJ must consider: (1) examining relationship; (2) treatment relationship; (3) supportability of the medical opinion; (4) consistency; (5) specialization of the physician; and (6) other factors. The ALJ must consider

---

[2] 20 C.F.R. § 404.1527 has been revised several times since the Fifth Circuit's opinions in *Newton* and in *Martinez* and the Court's reference to subsection (d)(2) refers to the factors now present at subsection (c)(2) of 20 C.F.R. § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006), *with* 20 C.F.R. § 404.1527 (Aug. 24, 2012). The Court further notes that for all claims filed on or after March 27, 2017, the Rules in § 404.1520c (not 1527) shall apply.

all six of these factors if "controlling weight" is not given to a treating physician's medical opinions. *Id*. ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion); *Newton*, 209 F.3d at 456 (stating the Fifth Circuit requires consideration of each of the 20 C.F.R. § 404.1527(c)(2) factors).

Notably, in *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. But, in subsequent decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there is competing first-hand medical evidence (i.e., competing opinions of treating or examining physicians), and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another, the ALJ need not necessarily set forth an analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id*. at 466-67. Stated differently, the detailed analysis under *Newton* is not necessary when the ALJ has weighed the treating physician's opinion against opinions of other treating or examining physicians who have specific medical bases for a contrary opinion.

*Weight Given to Dr. Vasey*

Here Plaintiff's counsel sets forth a thorough summary of the relevant medical evidence. There is no need herein to reiterate all of the medical evidence; as such, the Court cites only to the record evidence necessary to address the issues raised, including specifically Dr. Vasey's records.

Beginning on September 9, 2014, Plaintiff established care with Dr. Frank Vasey, a rheumatologist, for right-sided body pain and morning stiffness [TR 832]. Physical examination revealed diffuse abdominal tenderness, significantly decreased cervical spine range of motion, bilateral wrist hypermobility, crepitus in the knees, tender sacroiliac joints, and paraspinal spasms [TR 833]. Dr. Vasey diagnosed ankylosing spondylitis versus reactive arthritis, hypermobility, and idiopathic edema syndrome [TR 833]. He prescribed Sulfasalazine and Celebrex, and ordered x-rays [TR 833]. On October 13, 2014, Dr. Vasey reviewed a CT scan which showed severe sacroilitis [TR 826]. Physical examination revealed tenderness and significant hypermobility [TR 827]. Dr. Vasey diagnosed spondyoarthritis and prescribed Prednisone and Neurontin [TR 827]. On April 9, 2015, a physical examination again showed sacroiliac tenderness, paraspinal spasms, and hypermobility [TR 884-85]. Dr. Vasey prescribed Sulfasalazine, Arava, Prednisone, and Mobic [TR 885]. On April 22, 2015, Plaintiff returned due to pain all over [TR 882]. Physical examination revealed paraspinal spasms and sacroiliac tenderness [TR 883]. Dr. Vasey prescribed Norco and Sulfasalazine [TR 833]. Plaintiff reported unchanged symptoms in a May 7, 2015 visit [TR 880]. Dr. Vasey diagnosed undifferentiated spondyoarthropathy and also commented that Plaintiff "is completely physically disabled" [TR 881]. On June 29, 2015, a physical examination revealed 1+ synovitis in the left wrist and swollen flexor tendons [TR 878]. On August 13, 2015, physical examination documented tender sacroiliac joints, paraspinal spasms, and severe hypermobility [TR 874-76]. Plaintiff returned on October 15, 2015 due to symptoms of back pain, stiffness, depression, and irritation [TR 862]. Physical examination revealed rashes, severe hypermobility, 1+ synovitis in the wrists and left elbow, trace synovitis in the right ankle, multiple tender points, paraspinal muscle spasms, and tender sacroiliac joints [TR 864].

On November 4, 2015, Dr. Vasey completed a Disability Impairment Questionnaire. Therein, Dr. Vasey diagnosed undifferentiated spondyoarthritis and cited to findings of sacroilitis on an abdominal CT scan to support his assessment [TR 903]. Plaintiff's primary symptoms were back pain, stiffness, and severe fatigue [TR 904]. Plaintiff's symptoms were stated to be worsened by emotional factors; specifically, she was depressed and agitated [TR 907]. Dr. Vasey estimated that Plaintiff could sit for a total of one hour and stand/walk for a total of one hours in an eight-hour day [TR 905]. She would need to get up and move around every hour when sitting for at least twenty minutes [TR 905]. Plaintiff could occasionally lift and carry a maximum of five pounds, and she could rarely-to-never perform grasping, turning, twisting, use her hands and fingers for fine manipulations, or use her arms for reaching [TR 905-06]. Dr. Vasey further opined that Plaintiff's symptoms would frequently interfere with her attention and concentration [TR 906]. Dr. Vasey estimated that Plaintiff would require a 20 minute rest break every 1-2 hours, and she would miss work more than three times per month due to her impairments or treatment [TR 906-07].

The ALJ considered Dr. Vasey's medical records, including specifically Dr. Vasey's disability questionnaire, and expressly recognized Dr. Vasey as a treating physician [TR 20]. The ALJ noted that the questionnaire "indicated [Plaintiff] could sit, stand or walk for no more than one hour out of an 8-hour workday, should avoid continuous sitting for an 8-hour workday, could occasionally lift no more than 5 pounds, was limited to no repetitive reaching, handling or fingering, would frequently experience symptoms severe enough to interrupt attention and concentration, would require additional breaks beyond those typically afforded in competitive employment, would miss work more than three times per month and was completely physically disabled by pain, fatigue and stiffness" [TR 20]. The ALJ rejected these limitations and found

them to "be[] inconsistent with the physical examination observations contained in the record documenting full strength of the extremities with no focal neurological deficits as well as intact gait and station. (Ex. 7F; 8F; 10F; 27F)." Accordingly, the ALJ "afford[ed] these statements little weight." [TR 20]. Notably, the ALJ did not identify any specific controverting medical opinions and/or treatment notes within the voluminous cited exhibits (which are several hundreds of pages) that support the ALJ's position. Moreover, the ALJ did give "great weight" to the opinions from the non-examining state agency physicians [TR 21].

As a treating source, Dr. Vasey's medical opinions are entitled to controlling weight if well-supported and not inconsistent with other substantial evidence. The Commissioner argues that the ALJ properly declined to give controlling weight to Dr. Vasey's opinions as to Plaintiff's physical and mental functional capacity and that no analysis of the relevant factors is required, in part, because Dr. Vasey's own treatment records do not support his opinions in the disability questionnaire [Dkt. 9].[3] However, inconsistencies within a treating source's own records do not fall within the competing first-hand medical evidence exception recognized in *Newton* and "do not justify bypassing the detailed analysis of the six factors." *Davis v. Berryhill*, 2017 WL 3701689 (Aug. 10, 2017) (citing *Perry v. Colvin*, 2015 WL 5458925 (N.D. Tex. Sept. 17, 2015); *Losasso v. Commissioner*, 2017 WL 1251076 (E.D. Tex. Mar. 24, 2017)). Accordingly, to the extent the Commissioner relies on perceived inconsistencies between Dr. Vasey's physical examinations and his assessment of Plaintiff's limitations as set forth in the questionnaire, such inconsistencies do not relieve the ALJ of an obligation to set out a detailed analysis of the six factors.

---

[3] Commissioner further argues that the opinions of Dr. Vasey are actually statements indicating that he believed Plaintiff was physically disabled and unable to work, which such determinations are reserved to the Commissioner. The Court disagrees as it relates to Dr. Vasey's opinions on Plaintiff's areas of functioning. Despite the presence of any non-medical opinions by Dr. Vasey, the record clearly reflects that the ALJ rejected more than an ultimate opinion on disability by Dr. Vasey.

Moreover, neither the ALJ, nor the Commissioner's briefing, cites to a controverting or competing opinion from a treating or examining physician; and, the remaining evidence noted in the Commissioner's brief are opinions from non-examining consultants and/or Plaintiff's own testimony. Dr. Vasey provided the only medical opinion from a treating or examining source that assessed Plaintiff's abilities to (amongst other things) sit, stand, and walk, and also was the only treating source who opined on Plaintiff's likely absences from work. Again, to reiterate, the ALJ neither cites to any other competing first-hand medical evidence, nor does the ALJ find as a factual matter that another treating or examining doctor is more well-founded. "The Fifth Circuit only allows an ALJ to bypass [the six factor] analysis when he or she points to a 'competing opinion' of a [treating or] 'examining physician.'" *Wilkerson v. Berryhill*, 2017 WL 1091601 (N.D. Tex. March 23, 2017); *Trevino v. Berryhill*, 2018 WL 1449396 (N.D. Tex. March 2, 2018) (finding that because the ALJ did not identify what contradicting doctor's opinion she relied upon to reject the treating physicians' opinion, the ALJ was required to perform six factor analysis); *Boles v. Colvin*, 2016 WL 4257441 (N.D. Tex. May 27, 2016) (finding where the ALJ did not rely on any differences in opinions of treating physicians to controvert or to find either opinion more well-founded the ALJ was required to analyze the factors). The ALJ was therefore required to conduct the six-factor analysis before rejecting Dr. Vasey's opinions.

The ALJ erred in weighing and considering the medical opinions of Dr. Vasey, in particular, in failing to conduct the six factor analysis.[4] *See e.g, id., Patino v. Colvin*, No. 3:15-CV-618-BF, 2016 WL 1664912, at *7 (N.D. Tex. Apr. 25, 2016) (finding ALJ considered some relevant factors, but omission of three factors was error); *Rodriguez v. Colvin*, No. 2:14-CV-00093,

---

[4] It is unclear whether Commissioner argues that the ALJ did, in fact, implicitly conduct a factor analysis. To the extent Commissioner does advance such argument, the Court finds that the ALJ did not conduct a sufficient factor analysis.

2015 WL 5637545, at *8 (N.D. Tex. Sept. 3, 2015), *report and recommendation adopted sub nom. Rodriquez v. Colvin*, No. 2:14-CV-00093, 2015 WL 5666202 (N.D. Tex. Sept. 21, 2015) (finding case must be remanded where ALJ did not consider factors four through six). However, "[r]emand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curium). On the record before the Court, there is a realistic possibility the ALJ could have reached a different result. The opinions of Dr. Vasey support limitations greater than the RFC assessment. The vocational expert testified at hearing that a hypothetical person "of claimant's younger age, high school education, past work experience as you have previously described, who would have to alternate between sitting and standing every fifteen minutes" would not be able to obtain competitive employment [TR 78]. The vocational expert further opined that if Plaintiff's pain required her to miss work three times per month on average, this would also preclude competitive employment [TR 79]. Thus, had the ALJ properly weighed Dr. Vasey's opinions, the ALJ may have reached a different conclusion in this case. As such, the error is not harmless. Therefore, this case is remanded for reconsideration.[5]

## CONCLUSION

Pursuant to the foregoing, the decision of the Commissioner is **REMANDED**.

**SIGNED this 28th day of March, 2018.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

---

[5] It is emphasized that in remanding the Court makes no findings on the merits of Plaintiff's case for benefits and is not concluding that the ALJ erred by finding Plaintiff not disabled.